6/30/2017 5:33 PM
Velva L. Price
District Clerk
Travis County
D-1-GN-17-003012
Carrisa Escalante

CAUSE NO. **D-1-GN-17-003012**

| | | |
|---|---|---|
| ANWAR ANWARI, | § | IN THE DISTRICT COURT OF |
| | § | |
| Plaintiff, | § | |
| | § | TRAVIS COUNTY, TEXAS |
| v. | § | |
| | § | |
| TRAVIS COUNTY, | § | |
| | § | |
| Defendant. | § | **126TH** JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

Plaintiff Anwar Anwari brings this lawsuit against Defendant Travis County for failing to correct premises defects in the Travis County Jail, for deliberate indifference to his serious mental illness and right to be protected from self-harm, and for discriminating against him by failing to provide him a reasonable accommodation for his mental disabilities. As a result of the County's policy, practice, and custom of maintaining conditions dangerous for inmates with mental illnesses, Anwari fell 20 feet from a second-floor tier of the jail, suffering permanent injuries just as other individuals had in the past.

## STATEMENT OF CLAIMS

1. Plaintiff Anwar Anwari brings this civil action for damages against Travis County and its officials for maintaining dangerous premises in the Travis County Jail that the County knew to be hazardous.

2. Plaintiff further alleges Travis County had a policy, practice, and custom of failing to protect mentally ill detainees at the jail from self-harm, in violation of Plaintiff's Fourteenth Amendment rights under 42 U.S.C. § 1983.

EXHIBIT 2

3. Finally, Plaintiff alleges Travis County discriminated against him under the Americans with Disabilities Act and Rehabilitation Act by failing to provide reasonable accommodations for his mental illness, including safe housing.

## DISCOVERY

4. Plaintiff believes that discovery should be conducted under TEX. R. CIV. PROC. 190.4 (level 3). And while Plaintiff believes that the jury should decide the amount of damages in this case, as Rule 47 requires Plaintiff to provide guidance to the Court, the jury, and the Defendant, Plaintiff states the damages suffered by Plaintiff exceed $1,000,000.

## JURISDICTION AND VENUE

5. Venue is proper in Travis County pursuant to TEX. CIV. PRAC. & REM. CODE §15.002(a)(1) as the events giving rise to the claim occurred there.

6. Moreover, this Court has jurisdiction over the parties and the subject matter of the litigation as Plaintiff seeks damages within the jurisdictional limits of this Court.

## PARTIES

7. Plaintiff Anwar Anwari is an individual residing in Travis County, Texas.

8. Defendant Travis County is a political subdivision of the State of Texas. The County funds and operates the jail, employs and compensates the jail staff, and is charged with ensuring that, at all times, the jail remains in compliance with federal and state law. The County is a recipient of federal funds. The County can be served through the County Judge, Sarah Ekhardt, at 700 Lavaca Street, Suite 2.700, Austin, TX 78701.

## FACTS

9. Anwar Anwari was taken to a jail operated by Travis County as a pre-trial detainee. Because he could not make bond, he remained in jail awaiting trial.

10. After Travis County booked him into the jail, Anwari's father called to explain that he was a suicide risk.

11. The jail knew that Anwari had been diagnosed with schizoaffective and bipolar disorders years earlier and that he took medications to treat his mental illness.

12. Because of his schizoaffective disorder and bipolar disorder, Anwari suffered from recurring feelings of sadness, difficulty thinking and concentrating, and inability to perform daily tasks. As such, his mental illnesses prevented him from performing major life activities.

13. Travis County housed Anwari and other mentally ill detainees in conditions the County knew were dangerous. The cellblock Anwari was housed in had two floors that prisoners could walk up and down between when they were not locked in their cells. The second floor of the cellblock overlooked the dayroom on the first floor, and had just a short railing to stop prisoners from falling from the second floor to the concrete floor 20 feet below.

14. There was no fencing, netting, or grate to prevent prisoners known to be mentally ill from falling over the railing and crashing to the floor.

15. Travis County knew this was a dangerous condition.

16. In particular, Travis County's jail administrator and Sheriff at the time, Greg Hamilton, and County Commissioners knew that the unprotected second floor was a danger, especially to mentally ill prisoners who were suicide risks.

17. In November 2001, John Frump, a mentally ill prisoner at the jail, killed himself by jumping from a second-floor tier to the concrete floor below. Mr. Frump's survivors brought a wrongful death lawsuit against the County, which was ultimately settled.

18. Shortly after Mr. Frump's death, another prisoner at the jail tried to jump to his death from the second-floor tier. That prisoner survived the attempt but suffered serious, permanent brain damage.

19. On August 28, 2012, yet another inmate fell from the second floor to the first floor of his cellblock and suffered severe injuries to his skull, back, and spinal cord from the fall. He survived, but was wheelchair bound for life.

20. And, between 2005 and 2015, there were also ten inmate suicide deaths inside Travis County's jails.

21. Because the dangerous condition had not been remedied, in July 2015, Anwari fell from the second floor to the first floor, suffering critical damage to his skull and leg.

## CAUSES OF ACTION

I. NEGLIGENCE – PREMISES LIABILITY UNDER THE TEXAS TORT CLAIMS ACT

22. Anwari entered the jail on the order of the County, and remained there for the County's benefit.

23. The condition of the cellblock created an unreasonable risk of harm to Anwari, and Travis County knew about this condition.

24. Travis County failed to adequately warn Anwari of the condition and failed to make the condition reasonably safe.

25. Travis County's failure to make the cellblock reasonably safe proximately caused Anwari's injuries.

26. Travis County had actual notice of the dangerous condition, the injury it caused to Anwari, and its fault within six months of Anwari's injury.

II. FOURTEENTH AMENDMENT – CONDITIONS OF CONFINEMENT

27. Travis County's custom, policy and practice was to house prisoners with mental illnesses, including Anwari, in conditions it knew to be unsafe.

28. These conditions were sufficiently well known and pervasive to constitute policymakers' intended conditions and practices at the Travis County Jail. These practices and conditions had no legitimate penological purpose, were adopted with deliberate indifference, and were actually known, constructively known, and/or ratified by Travis County and its policymakers (including the Sheriff and the County Commissioners). Moreover, the known and obvious consequence of these policies was that inmates with mental illness including Anwari would be placed in recurring danger of this constitutional violation. Accordingly, these policies also made it highly predictable that the particular violations alleged here, all of which were under color of law, would result.

29. These conditions were the result of deliberate choices made by County policymakers, including the Sheriff and County Commissioners, despite the obvious danger to inmates housed inside the Jail. Policymakers at the Jail knew of these dangerous policies and conditions of confinement but failed to protect detainees from them.

30. Housing mentally ill and/or potentially suicidal detainees in a cellblock where jumping or falling 20 feet to a concrete floor when there are no safety mechanisms to catch them is a dangerous jail condition. The condition is arbitrary or purposeless, and serves no legitimate penological purpose, and was adopted with deliberate indifference to the rights and well-being of detainees like Plaintiff.

31. The County's decision to house Anwari and other mentally ill detainees in a cellblock where they could fall and suffer permanent injuries or death denied Anwari reasonably safe conditions in the jail and was the moving force of his injuries.

III. AMERICANS WITH DISABILITIES ACT AND REHABILITATION ACT

32. The Rehabilitation Act requires recipients of federal funds to reasonably accommodate persons with mental and physical disabilities in their facilities, program activities, and services and reasonably modify such facilities, services and programs to accomplish this purpose. 29 U.S.C. § 794.

33. Further, Title II of the ADA applies to Travis County and has the same mandate as the Rehabilitation Act. 42 U.S.C. § 12131 *et seq.* (2008).

34. The Travis County Jail is a facility, and its operation comprises a program and service, for Rehabilitation Act and ADA purposes.

35. For purposes of the ADA and Rehabilitation Act, Anwari was a qualified individual regarded as having a mental impairment (depression, bipolar disorder, and schizophrenia), and a medical condition (seizure disorder), that substantially limited one or more of his major life activities.

36. Defendant Travis County knew Anwari was a suicide risk, suffered from serious schizoaffective disorder and bipolar disorder, and was prescribed medication to

treat his mental illness. Despite this knowledge, Travis County's officers intentionally discriminated against him, under the meaning of the ADA and Rehabilitation Act, by failing and refusing to accommodate him with safe housing, including a housing assignment where he could not fall or attempt suicide and suffer serious injury.

37.  As alleged above, Travis County failed and refused to reasonably accommodate Anwari's mental and physical disabilities while in custody, in violation of the ADA and Rehabilitation Act. That failure and refusal caused his death.

38.  As alleged above, Travis County failed, and refused to reasonably modify its facilities, services, accommodations, and programs to reasonably accommodate Anwari's mental disabilities, including failing to erect a barrier mentally ill inmates could not jump from/fall over, in violation of the ADA and Rehabilitation Act. These failures and refusals proximately caused his death.

39.  Anwari suffered serious, permanent injuries as a direct result of Travis County's intentional discrimination against him.

## DAMAGES

40.  The actions or omissions of Travis County, its agents, employees, and/or representatives, proximately caused and/or were the moving force of the injuries and damages to Anwari.

41.  Anwari asserts claims for:

- Past and future mental anguish;
- Past and future physical pain and suffering;
- Past and future loss of earning capacity;
- Past and future medical bills;

- Past and future disfigurement;

- Past and future impairment; and

- Attorneys' fees pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 12205, or as otherwise allowed by law.

## ATTORNEYS' FEES AND COSTS

42. Pursuant to 42 U.S.C. § 1988, Plaintiff is entitled to recover attorneys' fees and costs against Travis County. Pursuant to 42 U.S.C. § 12205 Plaintiff is also entitled to recover attorneys' fees, costs, and expenses against Travis County for his ADA and Rehabilitation Act claims.

## PRAYER FOR RELIEF

THEREFORE, Plaintiff requests that the Court:

A. Award compensatory damages against Defendant under state and federal law, namely the Fourteenth Amendment, Section 1983, the ADA, Rehabilitation Act, and state tort law theories, as appropriate;

B. Award pre-judgment and post-judgment interest at the highest rate available under the law;

C. Find that Plaintiff is the prevailing party in this case and award him attorneys' fees, court costs, expert costs, and litigation expenses, as appropriate; and,

D. Grant such other and further relief as appears reasonable and just, to which Plaintiff may be entitled.

Dated: June 30, 2017.

Respectfully submitted,

The Edwards Law Firm
The Haehnel Building
1101 E. 11th Street
Austin, Texas 78702
    Tel.  512-623-7727
    Fax.  512-623-7729

By: /s/ Jeff Edwards
    JEFF EDWARDS
    State Bar No. 24014406
    Scott Medlock
    State Bar No. 24044783
    David James
    State Bar No. 24092572

**ATTORNEYS FOR PLAINTIFF**